Filed 10/8/13  Dampier v. Solar & Environmental Technologies CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WILLIAM DAMPIER et al., | |
| Plaintiffs and Appellants, | G045805 |
| v. | (Super. Ct. No. 30-2009-00124965) |
| SOLAR & ENVIRONMENTAL TECHNOLOGIES CORP., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a postjudgment order of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Bradley V. Black for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

\*          \*          \*

Plaintiffs William Dampier, Theodore Kobayashi, Samuel Lazzara, and Stanley Zelinger have filed appeals from an order granting a motion for attorney fees filed by defendant Solar & Environmental Technologies Corporation (SETC). SETC failed to file a respondent's brief. In this circumstance we could assume the truth of the opening brief's factual statements "without making an independent study of the record" and reverse the trial court's order on the assumption "the appellant[s'] points are well taken." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 720, p. 788.) But "since [an] appellant has the affirmative burden to show error whether or not [a] respondent's brief has been filed" (*In re Marriage of Davies* (1983) 143 Cal.App.3d 851, 854), "the better rule is to examine the record on the basis of appellant[s'] brief and to reverse only if prejudicial error is found" (*Walker v. Porter* (1974) 44 Cal.App.3d 174, 177). Thus, we shall decide the appeal based "on the record, the opening brief, and any oral argument by the appellant[s]." (Cal. Rules of Court, rule 8.220(a)(2).) Since plaintiffs have failed to establish reversible error, we affirm the fee award.

FACTS AND PROCEDURAL BACKGROUND

This case arises from a dispute over the purported transfer of property rights in solar powered energy system technology. Plaintiffs' initial June 2009 complaint stated a single cause of action for declaratory relief against SETC. The complaint alleged that in March 2006, plaintiffs and Ronald Derby executed an assignment and transfer agreement transferring their intellectual property rights for the technology to an entity named Cenicom Solar Energy, LLC (Cenicom). Derby signed the agreement on behalf of Cenicom. In January 2008, SETC, described as "a Delaware corporation doing business in the . . . State of New York," allegedly asserted, "'Cenicom transferred to . . . [SETC] all of its intellectual property rights to the . . . solar energy system, including [Plaintiffs'] assignments of future intellectual property and technical

2

knowledge, in a Know-How Transfer agreement,'" and that SETC "purport[edly is] a successor entity of Cenicom." Plaintiffs sought a "declaration that . . . SETC has acquired no rights with respect to the . . . 2006 'Assignment and Transfer Agreement,'" including any "'[f]uture [d]evelopments.'"

The trial court granted SETC's motion to quash for lack of personal jurisdiction. Plaintiffs filed an amended and then a second amended complaint adding two individual defendants, Derby and Robert Speiser, plus additional causes of action. In July 2010, the trial court sustained a demurrer to a cause of action for breach of fiduciary duty without leave to amend, but granted leave to amend on the pleading's other counts.

Plaintiffs' third amended complaint contained two causes of action for declaratory relief, one against SETC and the second against Derby and Speiser. In addition, it alleged a cause of action for fraud against all three defendants, plus two counts for material misrepresentations in securities transaction against SETC and two other counts alleging the same claim against Derby and Speiser. Again, defendants filed demurrers to this pleading. On November 1, 2010, the trial court sustained SETC's demurrer to the fraud count and one of the material misrepresentations in securities transaction counts without leave to amend, but granted plaintiffs leave to amend the remaining two causes of action asserted against SETC.

In late November 2010, plaintiffs filed a fourth amended complaint. It included the remaining counts alleged against SETC, plus other causes of action against Derby and Speiser. In general, the amended complaint alleged that after plaintiffs and Derby transferred their intellectual property rights for the solar powered energy system technology to Cenicom, Derby and others sought to raise capital for the commercial development of the technology. In July 2006, Derby, Speiser, and a third person (Fred Froewiss) allegedly formed SETC "and installed themselves as the corporation's sole shareholders, officers, and directors." At the same time that Derby and Speiser were forming SETC, they sent plaintiffs e-mails about a "proposed reverse merger deal" with

3

another entity, thereby "obtain[ing] public corporation status – and the means to . . . acquire much-needed additional capital." Thereafter, plaintiffs each received certificates reflecting their ownership of shares of SETC, "but received none of the [other] communications typically expected by shareholders of a corporation."

Eventually, plaintiffs learned "there had been no reverse merger" and SETC never had been "a publicly traded company." "[B]elieving the intellectual property which was the subject of the March 2006 Assignment & Transfer Agreement remained the property of Cenicom," plaintiffs then "sent written notice to Derby, Speiser, and SETC advising that [they] intended to independently pursue development of the solar technology." (Capitalization omitted.) In response, SETC "communicated to [p]laintiffs that . . . 'Cenicom transferred to [it] all of [the] intellectual property rights to the . . . solar energy system, including [plaintiffs'] . . . future intellectual property and technical knowledge."

At a July 2008 meeting where the parties "discussed their respective positions regarding the disputed ownership of intellectual property," plaintiffs alleged "Speiser produced a multi-page 'Shareholders Agreement'" he asked them to "immediately sign," representing that it "was necessary in order for the corporation to close a $5 million private investment deal essential for the continued operation of the business and development of the technology." Plaintiffs acknowledged signing the shareholders agreement and incorporated a copy of it as an exhibit to the amended complaint. But plaintiffs alleged they were induced to do so because defendants made a series of "material misrepresentations and omissions." In addition, plaintiffs alleged defendants did not "mention that the proposed agreement . . . was made up of additional documents [including a preferred stock purchase agreement and registration of rights agreement] which included a wide ranging set of additional topic area[s], factual representations, and terms of the SETC investment deal not disclosed . . . to Plaintiffs."

Based on their execution of the shareholders agreement, "SETC closed

4

a[] . . . sale of equity with outside investors which resulted in a dilution of the interests of the existing shareholders as well as substantial modification of shareholder rights and the placing of additional restrictions effecting all existing SETC shareholders," plus allowed SETC to "assert . . . [it] is 'the rightful owner of all intellectual property previously owned by Cenicom . . . and all future developments.'"

The declaratory relief count sought a determination that Derby lacked the authority "to transfer [to SETC] the intellectual property rights and assets of Cenicom," SETC knew "the purported transfer exceeded" his "authority," and consequently, SETC "acquired no rights with respect to the . . . 'Assignment and Transfer Agreement'" or plaintiffs' "'[f]uture [d]evelopments.'" Alternatively, plaintiffs sought a declaration that "the '[f]uture [d]evelopments' portion of the . . . 'Assignment and Transfer Agreement' is void and unenforceable." In their remaining material misrepresentation count against SETC, plaintiffs alleged they were entitled to "rescission of the . . . Shareholders Agreement" and "exchange of SETC securities affecting a change in the[ir] rights, preferences, privileges and restrictions," plus "the return of all consideration."

The incorporated shareholders agreement covers several issues on the rights of SETC's shareholders concerning acquisition of additional shares, transfer of them, voting rights, information and inspection privileges, plus participation on the corporation's board and in the management of it. As alleged, the shareholders agreement incorporated three other instruments described as investment documents: (1) A stock purchase agreement between SETC, its founders (Derby, Speiser, and Froewiss), plus two investors (CFS Solar Thermal Limited and Entropy Ventures Vehicle 4 Limited), whereby SETC agreed to sell over three million shares of stock to the investors; (2) a registration rights agreement between the same parties as the stock purchase agreement; and (3) a certificate of SETC's incorporation. The shareholders agreement contained an integration clause declaring the parties' entire agreement consisted of the shareholders agreement and investment documents.

The agreement contained an arbitration clause, providing "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination or validity thereof, shall be finally settled by a board of arbitration . . . in Hong Kong or such other jurisdiction as agreed between the disputing parties." In addition, it declared "[t]his Agreement shall be governed by, and construed in accordance with, the laws of Hong Kong without giving effect to any choice of law rule."

Defendants filed demurrers to the fourth amended complaint. A hearing on the demurrers was scheduled for February 4, 2011. On February 1, 2011, defendants also filed a motion to compel arbitration in Hong Kong based on the shareholders agreement.

At the February 4 hearing, the court overruled Derby's and Speiser's demurrers, but sustained SETC's demurrer on the remaining counts against it without leave to amend. The only two remaining causes of action, both against Derby and Speiser, sought declaratory relief concerning ownership and voting rights of Cenicom's members and the declaration of a constructive trust for the conveyance to plaintiffs of their intellectual property rights or, in the alternative, damages based on Derby's and Speiser's alleged fraud in acquiring ownership and control of the solar powered energy technology. Based on this ruling, SETC filed a motion seeking entry of a judgment dismissing it from the action under Code of Civil Procedure section 581, subdivision (f)(1) (all further statutory references are to this code unless otherwise indicated).

Two days later, the court heard defendants' motion to compel arbitration. It granted the motion and issued a stay in the current litigation pending completion of the arbitration. The court found the arbitration would resolve all of the remaining issues because the remaining causes of action against Derby and Speiser concerned the shareholders agreement. The court explained the first count "seeks a determination as to who has the majority interest in Cenicom. The underlying argument is that the [SETC] shareholders now dispute among themselves whether [SETC] received a valid transfer of the intellectual property from . . . a duly authorized person affiliated with

6

Cenicom. . . . [¶] . . . [D]efendants appear of necessity [to] be relying on the shareholders' agreement to establish their position that . . . [SETC] is the lawful owner of the intellectual property. Plaintiffs . . . concede that the remaining [cause of action] is a shareholder dispute. . . . [¶] . . . [I]t asserts fraud by the defendants in transferring the shares and intellectual property to [SETC]. . . . Once again, this is a dispute amongst the share[]holders of [SETC] and, therefore, I think properly also the subject of arbitration."

On March 18, the court heard SETC's motion to dismiss and granted it. Plaintiffs did not file any opposition to the motion or even appear at the hearing. The court signed an order dismissing SETC the same day.

In May, SETC filed a motion seeking an award of attorney fees based on the shareholders agreement's choice of law provision. SETC argued "that Hong Kong law, like English law upon which it is based, provides for recovery of attorney's fees, by the prevailing party." On July 18, the trial court issued an order granting the motion and awarded SETC over $157,000 in fees.

Plaintiffs individually filed notices of appeal from the latter ruling on September 19.

DISCUSSION

*1. The Trial Court's Jurisdiction to Award Attorney Fees*

Plaintiffs' first argument is that, having granted the defendants' motion to compel arbitration and issuing a stay which did not exclude SETC, the trial court lacked jurisdiction to grant SETC's attorney fees motion. Since "[t]he underlying decisive facts are undisputed[,] . . . we are presented with a legal question we decide de novo. [Citation.]" (*Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1548.) Nonetheless, we conclude the trial court properly rejected plaintiffs' claim it lacked jurisdiction to issue an attorney fee award in this case.

7

Section 1281.4 declares, "[i]f a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

Contrary to plaintiffs' argument, this statute did not oust the trial court's jurisdiction to act in this case. "In sum, an arbitration provision does not oust the court of jurisdiction to hear the matter but merely means if one party chooses to arbitrate, a petition may be filed to stay the proceedings, order arbitration and then confirm the award. [Citations.] Moreover, even when a stay has been issued, the court retains limited jurisdiction over the dispute. [Citations.]" (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 45-46.) Rather, "[o]nce a petition [to compel arbitration] is granted and the lawsuit is stayed, 'the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration.' [Citation.]" (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487.)

When the trial court granted the motion to compel arbitration and issued the stay, it had previously sustained SETC's demurrer to all of the causes of action alleged against it without leave to amend. At that point, plaintiffs' only remaining claims sought declaratory relief and fraud against Derby and Speiser. It is true SETC joined with Derby and Speiser in seeking to compel arbitration of the parties' dispute. But by the time that request was heard all claims against it had been eliminated. The trial court recognized this was the case when, during the hearing on SETC's fee motion, it stated, "Solar is out of this case, so they're not subject to any arbitration."

Moreover, by the time the trial court issued its attorney fee award, it had also granted SETC's motion to dismiss and entered a judgment dismissing it from the

action.  Contrary to plaintiffs' assertion, the dismissal was with prejudice.   SETC sought the dismissal pursuant to section 581, subdivision (f)(1).  It authorizes a court to "dismiss the complaint as to [a] defendant . . . [¶] . . . after a demurrer to the complaint is sustained without leave to amend and either party moves for dismissal."  (§ 581, subd. (f)(1).)  A dismissal under this subdivision is deemed to be with prejudice because the hearing on SETC's demurrer to the fourth amended complaint constituted a "'determinative adjudication.'"  (*Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1210; see also *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 785 [since ""'the defendant by his demurrer has admitted all the facts of the plaintiff's case"'" and once it is sustained without leave to amend, all that ""'remains to be done [is] to render judgment for the defendant,"'" there is ""'no reason why the judgment should not be regarded as a conclusive determination of the litigation on its merits"'"].)

Further, even assuming the stay applied to SETC as well as plaintiffs, Derby, and Speiser, the trial court's dismissal of SETC amounted to only an act in excess of its jurisdiction.  (*Dial 800 v. Fesbinder, supra,* 118 Cal.App.4th at p. 44 ["The submission of a dispute to private arbitration does not oust the superior court of jurisdiction"].)  Since the trial court signed and filed a written order dismissing SETC, that ruling was an appealable judgment.  (§ 581d.)  Plaintiffs failed to appeal from it.  Plaintiffs assert SETC timed its attorney fee motion so that they would not receive it "until after expiration of the appeal deadline for the . . . [j]udgment of [d]ismissal."  Not so.  An appeal must be filed either within "60 days after the superior court clerk" or a party "serves . . . a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment," or "180 days after entry of judgment."  (Cal. Rules of Court, rule 8.104(a).)  The appellants' appendix does not contain any indication the clerk or a party served either a notice of entry of the judgment of dismissal or a conformed copy of it.  Consequently, plaintiffs had until September 14, 2011 to appeal the dismissal.  Their

9

September 19, notices of appeal from the postjudgment order awarding SETC attorney fees came too late. The judgment dismissing SETC is now the law of the case.

Nor does the rationale for section 1281.4 justify barring the fee award in this case. "'The purpose of the statutory stay . . . is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved. [Citations.] [¶] In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective. [Citation.]' [Citation.]" (*MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 658.) During the hearing on the motion to compel arbitration, the court found the case involved "a dispute amongst the share[]holders of . . . [SETC]." It repeated this finding during the hearing on the fee motion. SETC's shareholders are parties to the arbitration. The dismissal of SETC from this lawsuit and awarding it attorney fees would not interfere with the arbitrator's jurisdiction over SETC's shareholders.

We conclude plaintiffs' jurisdictional claim lacks merit.


2. *The Attorney Fee Award*

Alternatively, plaintiffs attack the merits of the attorney fee order on several grounds. First, citing the choice of law clauses found in the investment documents incorporated into the shareholders agreement, they argue the trial court erred by relying on the latter contract's application of Hong Kong law to support the fee award. They also contend this action was based on other agreements, in particular the March 2006 assignment and transfer agreement that also contained choice of law clauses applying the law of other jurisdictions. Second, plaintiffs assert Corporations Code section 25701 renders the shareholder agreement's choice of law clause unenforceable, claiming that agreement and related documents amounted to a surrender of their existing SETC shares for new shares subject to additional restrictions and limitations. Finally, plaintiffs claim Hong Kong law does not support an attorney fee award.

10

As with the jurisdictional issue, since the facts are undisputed and our determination of these matters involve an examination of contract provisions and statutes, they present questions of law subject to de novo review. (*Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1045.) Nonetheless, we conclude plaintiffs' substantive claims lack merit.

Under Civil Code section 1717, subdivision (a), "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The shareholders agreement does not contain an attorney fee clause. But, as noted, section 13.1 of the contract declares the contract "shall be governed by, and construed in accordance with, the laws of Hong Kong without giving effect to any choice of law rule." In support of its motion for attorney fees, SETC argued Hong Kong law follows "[t]he so-called 'English rule,'" whereby "the prevailing party recovers attorney's fees from the losing party . . . ."

The general rule is that, "California does not have any public policy against a [contractual] choice of law provision, where it is otherwise appropriate" (*Gamer v. DuPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 286), and thus "[s]uch choice of law provisions are usually respected by California courts" (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 494).

In *Applera Corp. v. MP Biomedicals, LLC* (2009) 173 Cal.App.4th 769, we held the prevailing party could recover its attorney fees under a similar contractual choice of law clause. There the contract stated, "'This Agreement and its effect are subject to and shall be construed and enforced in accordance with the laws of Switzerland,'" which also followed the English rule. (*Id.* at p. 789.) "Swiss law—the payment of attorney fees to the prevailing party—does not violate California's public policy. Civil Code

11

section 1717 specifically authorizes courts to enforce contractual provisions requiring payment of attorney fees to the prevailing party. And Civil Code section 1717 requires an attorney fees clause to be applied on a reciprocal basis, even where the contract is nonreciprocal. Thus, the prevailing party's entitlement to attorney fees under Swiss law is qualitatively no different than the insertion of a reciprocal, prevailing-party attorney fees clause in a contract, which is clearly enforceable under California law." (*Id.* at p. 790.)

To counteract the foregoing authorities, plaintiffs note one of the contracts incorporated into the shareholders agreement, the registration rights agreement, contains a choice of law clause applying New York law and declares the offering of securities in the United States is governed by federal securities law and that of any applicable state. Plaintiffs cite to other agreements, in particular the March 2006 assignment and transfer agreement and two January 2007 contracts concerning the assignment of patents and a know-how transfer contract, they claim also contained other choice of law provisions. The problem with their reliance on these other contracts is that, except for the assignment and transfer agreement, plaintiffs are not parties to them, nor do they claim to be third party beneficiaries of the agreements. As for the assignment and transfer agreement, that contract was between plaintiffs and Derby and related to their transfer of intellectual property rights to Cenicom. SETC was not a party to that agreement. Thus, these alternative choice of law clauses are not relevant here.

Alternatively, plaintiffs contend the July 2008 transactions required them to exchange their existing shares in SETC for shares subject to additional restrictions and limitations. As a result, they argue the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.) applied and it invalidated any contractual choice of law clause applying the law of another jurisdiction.

Corporations Code defines an offer or sale or offer to sell a security in California to "include[] any exchange of securities and any change in the rights,

12

preferences, privileges, or restrictions of or on outstanding securities." (Corp. Code, § 25017, subd. (a).) In addition, Corporations Code section 25701 declares "[a]ny condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law or any rule or order hereunder is void." In *Hall v. Superior Court* (1983) 150 Cal.App.3d 411, we held a choice of law clause declaring a private securities agreement was governed by the law of another forum "violate[d] the Corporations Code and the public policy of this state," and thus "enforcement of the choice of forum provision [wa]s unreasonable." (*Id.* at p. 413.)

For the same reasons discussed above, we find plaintiffs' reliance on California's corporate securities laws unavailing. The only agreement signed by defendants was the shareholders agreement. It did not provide for plaintiffs' acquisition or exchange of SETC shares. Nor do they cite to or explain how any provision of that agreement modified their rights as shareholders. In fact, plaintiffs fourth amended complaint alleged that after they received their SETC shareholder certificates they "received none of [other] communications typically expected by shareholders." The remaining incorporated documents concerned the sale of additional shares to other investors. Thus, we find this argument also lacking in merit.

Finally, plaintiffs make a conclusory argument that Hong Kong law does not support an award of attorney fees to the prevailing party. In support of its attorney fee motion, SETC attached a declaration from a Hong Kong solicitor, declaring, "Hong Kong law regarding award of costs in civil litigation is based on English law and the so-called 'English Rule' that costs are awarded to the prevailing party" and "include fees, charges, disbursements, expenses and remuneration." Attached to the declaration was "'Order 62'" from "a current reference book" named, *Hong Kong Civil Procedure 2011*." In part, Order 62 states the term "'costs' . . . include fees, charges, disbursements, expenses and remuneration . . . ."

13

Plaintiffs contend this rule only applies to "proceedings in the High Court of Hong Kong" and thus is inapplicable in a California court. This argument ignores the fact the parties agreed to apply Hong Kong law, not that any litigation would be tried in Hong Kong. Also, plaintiffs argue in conclusory fashion the rule allowing recovery of attorney fees is subject to numerous exceptions. Without any "argument or explanation as to why . . . we treat this issue as waived for want of cognizable legal argument." (*Aviel v. Ng* (2008) 161 Cal.App.4th 809, 821.)

Thus, plaintiffs fail to present any ground for reversing the attorney fee award in this case.


DISPOSITION


The postjudgment order granting respondent's motion for attorney fees is affirmed. Appellants shall bear their own costs on appeal.



RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.


14